IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS P. DAVIS and MARVINA JENKINS, <br><br> Plaintiffs, <br><br> v. <br><br> UNUM GROUP and its Predecessors and Subsidiaries, including UNUMPROVIDENT CORPORATION, UNUM CORPORATION, PROVIDENT COMPANIES, INC., PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, and THE PAUL REVERE CORPORATION, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 03-940 |

DuBOIS, J.  June 16, 2011

**M E M O R A N D U M**

**I. INTRODUCTION**

In this action, plaintiffs Marvina Jenkins and Thomas P. Davis allege that disability insurer and administrator Unum Group and its predecessors and subsidiaries (collectively, "defendants" or "Unum") engaged in a scheme by which defendants "implemented bad faith claims handling practices resulting in the improper denial or determination of disability claims." (Remand Compl. ¶ 12.) The Remand Complaint alleges three counts against defendants, brought under various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

1

18 U.S.C. § 1961 et seq.[1] Count I is Jenkins's individual claim for benefits under ERISA § 502(a)(1)(B). In Count II plaintiffs seek injunctive relief to compel defendants to establish an "independent and fair procedure" to review all long-term disability claim "denials, terminations, or buy-outs at less than par by Unum" pursuant to ERISA §§ 502(a)(2) and (3). (Remand Compl. ¶ 47(A).) Count III is a claim under RICO in which plaintiffs allege that defendants' scheme violates 18 U.S.C. §§ 1962(b), (c), and (d).

Presently before the Court is defendants' motion for partial summary judgment. Defendants seek summary judgment only as to Counts II and III of the Remand Complaint. For the reasons that follow, defendants' motion is granted.

## II. BACKGROUND[2]

### A. The Parties

Defendants act both as direct insurers who issue long-term disability insurance policies, and also as third-party administrators for self-insured welfare benefit plans. (Remand Compl. ¶ 9; Answer to Remand Compl. ¶ 9.)

Jenkins was a participant in a welfare benefit plan offered by her employer and established, insured, and administered by defendants. (Remand Compl. ¶¶ 9, 39, 44.) Jenkins alleges that she became disabled on April 20, 1999, and thereafter received disability insurance

---

[1] As further explained in Section II.B., infra, the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred the case to the United States District Court for the Eastern District of Tennessee ("the MDL court") for consolidated proceedings. After the MDL Panel remanded the case to this Court, the Court directed plaintiffs to file a Complaint for Proceedings on Remand ("Remand Complaint").

[2] As required on a motion for summary judgment, the following facts are presented in the light most favorable to plaintiffs.

benefits from defendants beginning January 13, 2000. (Id. ¶¶ 40-41.) On November 1, 2000, defendants retroactively terminated her benefits from September 14, 2000 forward. (Id. ¶ 41.)

Unlike Jenkins, whose benefit plan was both established and administered by defendants, Davis was a participant in a long-term disability insurance plan established by his employer and administered by defendants. (Id. ¶ 9.) Davis alleges that he became disabled on July 16, 1991, and thereafter submitted a claim for disability insurance benefits, which was approved and paid through February 13, 2001, when one of the defendants recommended terminating his benefits. (Defs.' Stmt. of Undisputed Material Facts ¶¶ 6-7; Pls.' Resp. to Defs.' Stmt. of Undisputed Material Facts ¶¶ 6-7.) In 2004, Davis's employer reversed its position and agreed to pay him all benefits, plus interest and attorney's fees. (Defs.' Stmt. of Undisputed Material Facts ¶ 8; Pls.' Resp. to Defs.' Stmt. of Undisputed Material Facts ¶ 8.)

**B.    Procedural History**

A complaint was initially filed in this Court on February 19, 2003. On September 2, 2003, the MDL Panel ordered the case transferred to the Eastern District of Tennessee ("MDL court") for consolidation with other ERISA actions against Unum. The plaintiffs in the MDL filed a Consolidated Amended Complaint on February 25, 2004. In re UnumProvident Corp. ERISA Benefits Denial Actions, No. 1:03-md-1552, 2010 WL 323191, at *1 (E.D. Tenn. Jan. 19, 2010).

On November 14, 2004, UnumProvident Corporation ("UnumProvident"), which was renamed "Unum Group" in 2007, (Remand Compl. ¶ 6; Answer to Remand Compl. ¶ 6), entered into a multi-state regulatory settlement agreement ("RSA") with the Department of Labor ("DOL") and insurance regulators from Maine, Massachusetts, and Tennessee. Id. The RSA

3

became effective on December 20, 2004, and has been signed by 48 state or territorial insurance commissioners. Id. Under the RSA, UnumProvident agreed to make certain changes to their claims handling practices and to re-review previously denied or terminated claims under those new practices. Id.

Defendants moved for summary judgment on July 1, 2005, and discovery in the MDL closed in July 2007. On September 4, 2007, the MDL court granted plaintiffs' April 9, 2004 motion for class certification, but was subsequently reversed by the Sixth Circuit on January 12, 2009. Id.; Romberio v. UnumProvident Corp., 385 F. App'x 423 (6th Cir. 2009).

On January 19, 2010, the MDL court granted in part, and otherwise declined to rule on, defendants' motion for summary judgment. The MDL court granted summary judgment on plaintiffs' claim for "injunctive relief in the form of court-supervised reformation of Defendants' nationwide claim-handling procedures," concluding that the claim "has been rendered moot by the RSA." In re UnumProvident Corp., 2010 WL 323191, at *3. In so ruling, the MDL court noted that the RSA "requires and implements new practices and procedures," "creates internal and external oversight mechanisms," and "provides significant oversight to be provided by the DOL and state regulators." Id. That court, however, declined to grant summary judgment on plaintiffs' request for an independent review of their claims, concluding that because the re-review provided under the RSA was entirely voluntary, the RSA had not rendered plaintiffs' claim for independent review moot. Id. at *4. The MDL court also declined to rule on any other ground for summary judgment, concluding that those issues should be left for resolution by the transferor courts. Id. at *4-*5.

On June 8, 2010, the MDL Panel remanded Jenkins and Davis's action to this Court. On June 22, 2010, this Court ordered plaintiffs to file and serve a Complaint for Proceedings on Remand. Plaintiffs filed a Remand Complaint on July 26, 2010, alleging that since early 1995, defendants designed and implemented a bad-faith scheme to improperly deny or terminate disability insurance claims. (Remand Compl. ¶¶ 12-15.) The Remand Complaint asserts two counts under ERISA and one count under RICO. Count I seeks court review of Jenkins's claim for individual benefits under ERISA § 502(a)(1)(B). Count II, brought pursuant to ERISA §§ 502(a)(2) and (3), seeks court appointment of a Special Master to supervise defendants' creation and maintenance of an independent and fair procedure to review all long-term disability claim denials, terminations, and buy-outs at less than par. In Count III, plaintiffs allege RICO violations under 18 U.S.C. §§ 1962(b), (c), and (d), and seek, inter alia, economic damages, interest, and attorney's fees.

Defendants filed the present motion for summary judgment on August 20, 2010. On September 3, 2010, the Court adopted the parties' joint proposed scheduling order, which established a schedule for briefing on defendants' pending motion for summary judgment and provided that "[w]ithin 30 days of the issuance of a decision on the pending motion for summary judgment, the parties will submit a joint proposed scheduling order, if any is necessary." (Order of September 3, 2010, Document No. 37.) The parties' September 3, 2010 proposed scheduling order did not provide for, or make reference to, any discovery to be conducted following remand of the case by the MDL Panel. (Id.)

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Defendants raise three arguments in support of their motion for partial summary judgment. First, they argue that Davis does not have standing to maintain this action. Second, they contend that the injunctive relief sought in Count II is unavailable under ERISA §§ 502(a)(2) and (3). Third, they argue that there is no evidence to support plaintiffs' RICO claims. The Court addresses each issue in turn.

A.      **Davis's Standing**

Defendants argue that Davis lacks standing to bring this action because he has not suffered any injury. Plaintiffs counter that Davis does have standing because: (1) RICO provides damages for economic harm, for which Davis has not been compensated; and (2) Davis stands in a representative capacity to obtain equitable relief in the form of changes to defendants' claim review process. (Pls.' Resp. at 30-31.) The Court rejects plaintiffs' position.

The only injury Davis suffered, according to the Remand Complaint, is the deprivation of disability insurance benefits. But Davis long ago received all disability insurance benefits due to him, in addition to interest and attorney's fees. Although plaintiffs argue in their response to defendants' motion for summary judgment that Davis also suffered "economic harm" from the initial denial of his benefit claim, there are no allegations of any such harm in the Remand Complaint, and plaintiffs have not produced any evidence of such harm. Given plaintiffs' failure to allege any harm other than the denial of disability benefits, and given that Davis has already received all benefits due to him, Davis lacks any "injury in fact" sufficient to establish Article III standing for the RICO claims alleged in the Remand Complaint. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent . . . .'") (internal citations omitted). Having received all benefits due to him, Davis also lacks standing to recover unpaid benefits under ERISA § 502(a). Moreover, for reasons discussed in the next section of this Memorandum, Davis does not have standing to obtain equitable relief by representing the interests of those not party to this suit.

Having concluded that Davis lacks standing, the Court grants defendants' motion for summary judgment as to Davis's claims in Counts II and III of the Remand Complaint on that ground.

### B. Count II: Injunctive Relief Under ERISA §§ 502(a)(2) and (3)

In Count II, plaintiffs seeks injunctive relief under ERISA §§ 502(a)(2) and (3), specifically requesting that the Court:

> Appoint[] a Master to set up and maintain or direct and supervise the setting up and maintaining by Unum of an independent and fair procedure to review and evaluate all long-term disability claim denials, terminations, or buy-outs at less than par by Unum from the date of implementation of its scheme to date with respect to employee benefit group insurance policies governed by ERISA, with all costs to be borne by Unum.

(Remand Compl. ¶ 47(A).)

This relief is not available to plaintiffs under either §§ 502(a)(2) or (3). As a preliminary matter, given that no class has been certified, plaintiffs may not seek independent review of the disability claims of others. See Romberio v. Unumprovident Corp., 385 F. App'x 423, 430-33 (6th Cir. 2009) (overruling MDL court's certification of a class in this matter). In the absence of class certification, the claims of others are not before the Court, and plaintiffs do not have standing to represent the claims of those who are not parties to this action.[3] See Moose Lodge

---

[3] Commonwealth v. Porter, 659 F.2d 306 (3d Cir. 1981), cited by plaintiffs to argue that the lack of class certification is not fatal to recognition of a plaintiff's representative standing, is inapposite. In that case, the Third Circuit held that the Commonwealth of Pennsylvania could sue in its status as parens patriae to redress civil rights abuses committed by a police officer and borough officials. Id. at 313-19. The court did not hold that, outside of parens patriae actions, a plaintiff may bring suit for class-wide relief despite the absence of class certification.

No. 107 v. Irvis, 407 U.S. 163, 166 (1972) ("[A plaintiff] has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others.").

### 1. *The Injunctive Relief Plaintiffs Seek is Not Available Under § 502(a)(3)*

Given the Court's determination that plaintiffs may not seek injunctive relief on behalf of others, a question remains as to whether they may invoke § 502(a)(3) to seek such relief on their own behalf. They may not. As discussed in Section IV.A., supra, Davis does not have standing to seek review of a disability benefit claim for which he has already been paid in full. As for Jenkins, the injunctive relief she seeks in Count II—in the form of independent review of her disability claim—is unavailable under § 502(a)(3): § 502(a)(1)(B) provides her with an adequate legal remedy, thus precluding relief under § 502(a)(3). Moreover, plaintiffs' request in Count II that the Court appoint a Special Master to oversee defendants' establishment of independent and fair procedures for review of claims has been rendered moot by the RSA.

Section 502(a)(3) authorizes suits for individualized equitable relief for breach of fiduciary duty, Ream v. Frey, 107 F.3d 147, 152 (3d Cir. 1997), and permits a "participant, beneficiary, or fiduciary [to sue:] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). However, "such relief is available only where a plaintiff has no alternative remedy under other provisions of § 502." Johnston v. Exelon Corp., No. 04-4040, 2005 WL 696896, at *5 (E.D. Pa. Mar. 23, 2005).

Jenkins asserts, in Count I, a claim under § 502(a)(1)(B) of ERISA for reversal of the termination of her disability claim and an award for "unpaid past and future benefits."[4] (Remand Compl. ¶ 44(A).) In Count II, she asserts a claim under § 502(a)(3) of ERISA for independent review of her disability claim. (Id. ¶ 47(A).) The only difference between the two ERISA claims is that the § 502(a)(3) claim seeks independent review, whereas the § 502(a)(1)(B) claim seeks review by this Court. Section 502(a)(1)(B) affords Jenkins with an adequate remedy, in the form of review of her claim by this Court. Because § 502(a)(3) acts merely as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," Jenkins is precluded from pursuing a claim for independent review under § 502(a)(3). Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); see also Ream, 107 F.3d at 152 ("Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided."); Johnston, 2005 WL 696896, at *5 (granting defendant's motion to dismiss plaintiff's § 502(a)(3) claim because plaintiff had available equitable relief under § 502(a)(1)(B)).

With respect to that portion of Count II in which plaintiffs seek court appointment of a Special Master to supervise defendants' creation of an "independent and fair procedure" for the review of disability claim denials, terminations, and buy-outs at less than par, (Remand Compl. ¶ 47(A)), the MDL court has already ruled such a claim moot in light of the RSA. In re Unumprovident Corp. ERISA Benefits Denial Actions, No. 03-1552, 2010 WL 323191, at *3 (E.D. Tenn. Jan. 19, 2010). The MDL court found that the RSA "requires and implements new

---

[4] Section 502(a)(1)(B) authorizes a beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

practices and procedures . . . [, and] Plaintiffs have offered no evidence suggesting Defendants' new procedures do not fully comply with ERISA." Id. Thus, adopting the reasoning of the MDL court, there is "no meaningful relief" to be gained in this case from ordering either a Special Master or defendants to "set up and maintain . . . an independent and fair procedure" to review disability claims. Id.; Remand Compl. ¶ 47(A).

2.  *The Injunctive Relief Plaintiffs Seek is Not Available Under § 502(a)(2)*

The independent review sought by plaintiffs also is unavailable under § 502(a)(2). Section 502(a)(2) empowers "the Secretary, . . . a participant, beneficiary or fiduciary" to sue for breaches of fiduciary duty. 29 U.S.C. § 1132(a)(2). Section 502(a)(2), however, only allows for actions on behalf of the plan, and does not provide for individual relief. See LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008); Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985). Plaintiffs therefore may not bring a claim for independent review of their benefit claims, as such relief would remedy their individual injuries rather than any injuries to the plan.[5] See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by . . . § 502(a)(2).").[6]

To the extent plaintiffs' claim is intended to benefit the plan through the implementation of new procedures for review of disability claims, the MDL court has already held that the RSA

---

[5] As discussed in Section IV.A., supra, Davis does not even have an individual injury. He has already been paid all benefits due to him and accordingly does not have standing to maintain this action.

[6] Section 502(a)(2) claims typically involve situations in which an ERISA plan trustee has mismanaged plan assets or has distributed assets in an unauthorized manner in violation of clear and unambiguous plan language. See, e.g., Leckey v. Stefano, 501 F.3d 212, 225-27 (3d Cir. 2007); Graden v. Conexant Sys. Inc., 496 F.3d 291, 297-98 (3d Cir. 2007).

renders such a claim moot. In re Unumprovident Corp. ERISA Benefits Denial Actions, No. 03-1552, 2010 WL 323191, at *3 (E.D. Tenn. Jan. 19, 2010).

For the reasons discussed above, the injunctive relief sought in Count II is unavailable under either §§ 502(a)(2) or (3). Accordingly, defendants' motion for summary judgment is granted as to Count II of the Remand Complaint.

### C. Count III: RICO – 18 U.S.C. § 1962(b), (c) and (d)

Defendants argue that summary judgment should be granted as to plaintiffs' RICO claims because plaintiffs have failed to present any evidence of a RICO violation. As a general matter, plaintiffs respond that summary judgment on their RICO claims is premature because no RICO claims were asserted in the MDL and plaintiffs therefore have not had the opportunity to conduct any discovery as to those claims. Plaintiffs accordingly assert that at this stage, they need only allege violations of RICO to survive summary judgment. Plaintiffs are incorrect.

Although plaintiffs complain that they have not been afforded the opportunity to conduct discovery on their RICO claims, they have never requested time to conduct such discovery. The parties' joint proposed scheduling order of September 3, 2010, submitted after defendants filed their motion for summary judgment, does not provide for RICO discovery and makes no reference to discovery of any kind.[7]

---

[7] To support their RICO claims, plaintiffs filed a "RICO Case Statement" and accompanying exhibits on April 27, 2011. (Document No. 45.) The Court declines to consider this filing. A RICO Case Statement is a document generally, if not exclusively, used to expand on allegations of a Complaint; it is not to be used as evidence in opposition to a motion for summary judgment. Moreover, the time for completing briefing on defendants' motion for summary judgment was November 3, 2010. The Court deems inappropriate plaintiffs' attempt to supplement briefing on defendants' motion by filing hundreds of pages of exhibits almost six months after the motion became fully briefed.

Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Under Rule 56(d), a non-moving party who believes a motion for summary judgment is premature, and who "cannot present facts essential to justify its opposition may—and, indeed, must—show[] by affidavit, how evidence of such facts would preclude summary judgment. Koehnke v. City of McKeesport, 350 F. App'x 720, 723 (3d Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original). Failure to file a Rule 56(d) affidavit is "fatal to a claim of insufficient discovery," and there is a strong presumption against finding constructive compliance with the Rule. NASCAR v. Scharle, 184 F. App'x 270, 274 (3d Cir. 2006); Bradley v. United States, 299 F.3d 197, 207 (3d Cir. 2002). Plaintiffs have not filed a Rule 56(d) affidavit in this case, and contrary to their assertion, the absence of discovery on their RICO claim does not lower the standard of review for defendants' motion for summary judgment to that of a pleading standard. Thus, the Court will review defendants' motion for summary judgment under the standard enunciated in Section III, supra.

Plaintiffs allege that defendants violated 18 U.S.C. §§ 1962(b), (c), and (d).[8] To prevail under any of these RICO provisions, a plaintiff must establish, inter alia, the existence of a RICO "enterprise" and a "nexus" between defendants' operation, acquisition, or control of a RICO enterprise and defendants' racketeering activities. In re Ins. Brokerage Antitrust Litig., 618 F.3d

---

[8] Subsections (b), (c) and (d) prohibit, respectively, the acquisition or control of an enterprise through a pattern of racketeering activity, the operation of an enterprise through a pattern of racketeering activity, and conspiring to violate 18 U.S.C. § 1962(a), (b) or (c). See 18 U.S.C. §§ 1962(b), (c), (d); Reves v. Ernst & Young, 507 U.S. 170, 182 (1993).

13

300, 370-72 (3d Cir. 2010); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993); Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 296-97 (3d Cir. 1991); cf. In re Ins. Brokerage, 618 F.3d at 373. Plaintiffs have failed to present any evidence of a RICO "enterprise" under subsection (c) or of the "nexus" element of subsection (b). Given their failure to prove violations of subsections (b) or (c), they necessarily have failed to prove a violation of subsection (d). See 18 U.S.C. § 1962(d) (making it unlawful to conspire to violate §§ 1962(a), (b) or (c)); cf. In re Ins. Brokerage, 618 F.3d at 373 ("[A] § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'") (citation omitted). Thus, the Court need not reach the merits of the parties' arguments as to the other elements of §§ 1962(b), (c), and (d), and grants defendants' motion for summary judgment as to Count III of the Remand Complaint.[9]

### 1. *Enterprise*

"Enterprise" is defined in the RICO statute to include two types of associations: (1) "organizations such as corporations and partnerships, and other 'legal entities'"; and (2) "any union or group of individuals associated in fact although not a legal entity." In re Ins. Brokerage, 618 F.3d at 364 (citations and internal quotation marks omitted); 18 U.S.C. § 1961(4). With respect to the latter category—association-in-fact enterprises—the Third Circuit has held that "an association of corporations for illicit purposes" may constitute an enterprise. Shearin v. E.F.

---

[9] To prevail under § 1962(b), a plaintiff must show that: "(1) a defendant person; (2) acquired or maintained an interest in or control of; (3) an enterprise . . .; (4) through a pattern of racketeering activity." Sowell, 926 F.2d at 296. To prevail under § 1962(c), a plaintiff must prove the following: "(1) a defendant person; (2) employed by or associated with; (3) an enterprise . . .; (4) who conducts or participates in the affairs of the enterprise; (5) through a [pattern of] racketeering activity." Id. at 296-97; see also In re Ins. Brokerage, 618 F.3d at 363. Section § 1962(d) makes it unlawful "for any person to conspire to violate" §§ 1962(a), (b) or (c). 18 U.S.C. § 1962(d).

14

Hutton Group, Inc., 885 F.2d 1162, 1165 (3d Cir. 1989), abrogated on other grounds by Beck v. Prupis, 529 U.S. 494 (2000).

In this case, plaintiffs plead the existence of both categories of enterprises described in 18 U.S.C. § 1961(4). Specifically, the Remand Complaint alleges the existence of numerous RICO enterprises of the first type—legal entities—and defines the enterprises as "the employer purchasers or self-insurers of group long-term disability insurance policies covering their employees." (Remand Compl. ¶ 49.) In responding to defendants' motion for summary judgment, however, plaintiffs ignore the Remand Complaint's conception of the alleged enterprises in this case, and instead assert the existence of the second type of enterprise—a single association-in-fact enterprise—consisting of "Unum and employer purchasers or sponsors of the policies." (Pl.'s Resp. at 28 (emphasis added).)

Plaintiffs have failed to present any evidence to demonstrate the existence of an association-in-fact enterprise in the form of "Unum and employer purchasers or sponsors of the policies." An association-in-fact enterprise must have a structure. In re Ins. Brokerage, 618 F.3d at 366. Specifically, the enterprise must have three structural features: (1) a common purpose; (2) "relationships among those associated with the enterprise"; and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 368 (quoting Boyle v. United States, 129 S. Ct. 2237 (2009)). But plaintiffs have not presented any evidence—or even alleged—that defendants and the employers who purchased or sponsored defendants' insurance policies were in any way united in pursuit of a common purpose. Nor have they produced any evidence regarding the nature of the relationships amongst the various employers and

15

defendants. Thus, they have failed to demonstrate the existence of an association-in-fact enterprise.

Plaintiffs' alternative theory, alleged in the Remand Complaint, is that numerous enterprises existed—each consisting of a single employer purchaser or self-insurer of group long-term disability insurance policies. 18 U.S.C. § 1961(4), the definitions section of the RICO statute, defines "enterprise" to include, <u>inter alia</u>, "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Plaintiffs have not identified all the employers alleged to be enterprises in this case. Assuming, however, that each employer is a corporation or other legal entity, each employer would qualify as an "enterprise" for purposes of § 1961(4). But the "enterprise" analysis does not stop at § 1961(4). Courts have construed the various provisions of § 1962 to place additional limitations on the types of entities that may qualify as "enterprises."

In this case, plaintiffs contend that the "employer entities suffered harm" as a result of defendants' alleged racketeering activity, and were thus <u>victims</u> of such activity. (Remand Compl. ¶ 49.) Because plaintiffs characterize the employers as victims, the employers cannot be "enterprises" for purposes of § 1962(c). While a victim of racketeering activity may constitute an "enterprise" for purposes of § 1962(b), it cannot be an "enterprise" for purposes of § 1962(c).

Recognizing that the "enterprises" in subsections (b) and (c) play different roles, the Supreme Court and Third Circuit have held that a subsection (b) "enterprise" is a victim that is acquired through racketeering activity, whereas a subsection (c) "enterprise" can never be a victim of racketeering activity because it is the vehicle through which racketeering activity is committed. See <u>Nat'l Org. for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 259 (1994); <u>Jaguar Cars,</u>

16

Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 266-67 (3d Cir. 1995). Under subsection (c), "a victim corporation [is not] the enterprise through which . . . racketeering activity [is carried out;] [r]ather, . . . the proper enterprise [is] the association of [persons] who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962(c) claimant." Jaguar Cars, 46 F.3d at 267 (emphasis omitted). Because plaintiffs allege that the employers were victims of defendants' alleged racketeering activity, each employer entity may qualify as a subsection (b) enterprise, but not a subsection (c) enterprise.

Having determined that plaintiffs have failed to present evidence of a subsection (c) enterprise, the Court concludes that summary judgment is appropriate as to their 18 U.S.C. § 1962(c) claim. If supported by appropriate evidence of the employers' status as corporations or other legal entities, each individual employer may qualify as an enterprise under § 1962(b). Notwithstanding that plaintiffs have produced no evidence as to the identities or legal status of the various employers, the Court proceeds in the next section to analyze the "nexus" element of subsection (b).

      2.    *Nexus*

Section 1962(b) prohibits the acquisition or control of an interest in a RICO enterprise. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993). The subsection reads: "It shall be unlawful for any person <u>through a pattern of racketeering activity</u> . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise." 18 U.S.C. § 1962(b) (emphasis added). In order to recover under this subsection, a plaintiff must establish that "the interest or control of the RICO enterprise by the [defendant] is <u>as a result of</u> racketeering." Lightning Lube, 4 F.3d at 1190 (emphasis added).

17

The record on summary judgment is void of any evidence that defendants acquired or controlled any of the employers alleged to be RICO enterprises. There is no evidence that defendants acquired an enterprise through racketeering activity. And while plaintiffs allege that defendants controlled the employer purchasers or self-insurers of disability insurance policies "by administering and managing a portion of their employee relations and human resource functions," (Pls.' Resp. at 28), they have produced absolutely no evidence of such control.

Even if defendants can be shown to have acquired an interest in the employers or to have somehow controlled a portion of the employers' "employee relations and human resource functions," (id.), plaintiffs cannot possibly prove a nexus between defendants' alleged racketeering activities and defendants' acquisition or control of the employers. Plaintiffs contend that the pattern of racketeering activity in this case is defendants' use of the mail and wires to engage in a "wrongful scheme to deny or terminate long term disability policies for financial gain." (Pls.' Resp. at 29-30.) To satisfy the nexus requirement of subsection (b), plaintiffs would have to establish that defendants acquired an interest in the employers, or gained control of the employers' affairs, <u>through</u> the alleged scheme to wrongfully deny or terminate disability benefit claims. Such a nexus could not possibly exist, and to conclude otherwise would defy logic: Defendants could not have implemented the alleged scheme to improperly deny or terminate benefits <u>as a means of</u> obtaining control over the employers; defendants' control over the employers necessarily would have had to precede the implementation of the alleged wrongful scheme. Thus, plaintiffs have failed, under subsection (b), to establish a nexus between defendants' alleged pattern of racketeering activity and defendants' acquisition or control over the employers.

18

In light of plaintiffs' failure to present any evidence of a subsection (c) enterprise or of the nexus element of subsection (b), their claims under 18 U.S.C. §§ 1962(b), (c), and (d) must fail. Cf. In re Ins. Brokerage, 618 F.3d at 373 ("[A] § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'") (citation omitted). Accordingly, defendants' motion for summary judgment is granted on plaintiffs' RICO claims. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); Rago v. City of Pittsburgh, No. 10–3469, 2011 WL 2144435 (3d Cir. June 1, 2011) (upholding grant of summary judgment where plaintiffs produced "no evidence" to support claim).

## V. CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted as to Counts II and III of the Remand Complaint. The only claim remaining in this case is Count I, Jenkins's individual claim for benefits under ERISA § 502(a)(1)(B). An appropriate order follows.